UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIDIA FERRER,<br><br>                              Plaintiff,<br><br>v.<br><br>FCA US LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive,<br><br>                              Defendant. | Case No.: 3:17-cv-00530-AJB-BGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART:**<br><br>**(1) PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES, (Doc. No. 63); AND**<br><br>**(2) PLAINTIFF'S MOTION TO RE-TAX, (Doc. No. 93)** |

Before the Court is Plaintiff Nidia Ferrer's ("Plaintiff") (1) motion for attorneys' fees, costs, and expenses, (Doc. No. 63), and (2) motion to re-tax costs, (Doc. No. 93). Defendant FCA US LLC ("FCA") opposed both motions. (Doc. Nos. 69, 95.) For the reasons stated herein, the Court **GRANTS IN PART AND DENIES IN PART** both motions, with a reduction of fees as set forth below.

I.     **BACKGROUND**

This case arises out of the purchase of a new 2011 Jeep Wrangler for a sales price of $39,590.24. The Vehicle was manufactured and distributed by Defendant FCA US LLC, which provided a written warranty with the Vehicle. Within the applicable warranty period, the Vehicle exhibited issues relating to repeated oil level issues (i.e. the oil level dropping

1

rapidly), clicking noises, and various recalls. Despite numerous attempts by FCA to fix Plaintiff's Vehicle, the problems persisted. Plaintiff eventually contacted FCA customer service in 2015, and requested FCA repurchase the defective Vehicle. FCA rejected Plaintiff's request. Plaintiff filed her Complaint in San Diego Superior Court on November 22, 2016, alleging violations of the Song-Beverly Act and fraudulent concealment. The action was removed to this Court on March 21, 2017. On July 17, 2019, the parties filed a joint settlement. (Doc. No. 56.) Plaintiff filed her motions for attorneys' fees, costs, and expenses, and FCA opposed the motions. (Doc. Nos. 63, 69, 93, 95.) This order follows.

## II.   LEGAL STANDARD

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law." *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007); *see also Mangold v. Cal. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting that in a diversity action, the Ninth Circuit "applied state law in determining not only the right to fees, but also in the method of calculating the fees").

As explained by the Supreme Court, "[u]nder the American Rule, 'the prevailing litigant ordinarily is not entitled to collect a reasonable attorneys' fee from the loser.'" *Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Electric Co.*, 549 U.S. 443, 448 (2007) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)). However, a statute allocating fees to a prevailing party can overcome this general rule. *Id.* (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967)). Under California's Song-Beverly Act, a prevailing buyer is entitled "to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 794(d).

The Song-Beverly Act "requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the

2

case the amount of actual time expended, and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor America*, 31 Cal. App. 4th 99, 104 (1994). The court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited, and the results achieved." *Id.* If the court finds the time expended or fee request "is not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount." *Id.* "A prevailing buyer has the burden of showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.'" *Id.* (quoting *Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 816 (1992)); *see also Goglin v. BMW of North America*, LLC, 4 Cal. App. 5th 462, 470 (2016) (same). If a fee request is opposed, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Premier Med. Mgmt. Sys. v. Cal. Ins. Guarantee Assoc.*, 163 Cal. App. 4th 550, 564 (2008). Rather, the opposing party has the burden to demonstrate the hours spent are duplicative or excessive. *Id.* at 562, 564; *see also Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("[t]he party opposing the fee award can be expected to identify the particular charges it considers objectionable").

## III. DISCUSSION

### A. Plaintiff's Attorneys' Fee Request

As a prevailing buyer, Plaintiff is entitled to an award of fees and costs under the Song-Beverly Act. *See* Cal. Civ. Code § 1794(d); *see also Goglin*, 4 Cal. App. 5th at 470. Here, Plaintiff moves the Court: (1) for an award of attorneys' fees pursuant to California Civil Code § 1794(d) under the "lodestar" method in the amount of $43,362.50, (2) for a "lodestar" modifier of 0.5 under California law, in the amount of $21,433.75, and (3) to award actual costs and expenses incurred in the amount of $20,990.93. Plaintiff requests a total of $85,787.18 in attorneys' fees, costs, and expenses. (Doc. No. 63-1 at 7.) FCA acknowledges Plaintiff is entitled to recover attorneys' fees and costs, but argues the amount requested is unreasonable and should be reduced. (Doc. No. 69 at 5.)

//

### 1.     Hours Worked By Counsel

First, Plaintiff seeks $25,557.50 for work completed by Knight Law Group ("KLG") and $17,805.00 for work completed by co-counsel, Wirtz Law. (Doc. No. 63-2 at 36; Doc. No. 63-3 at 11.) This totals $43,362.50 in attorneys' fees for both law firms. To recover attorneys' fees, a fee applicant must provide time records documenting the tasks completed and the amount of time spent. *See Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007). Under California law, a court "must carefully review attorney documentation of hours expended" to determine whether the time reported was reasonable. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (quoting *Serrano v. Priest*, 20 Cal.3d 25, 48 (1977)). Thus, evidence provided by the fee applicant "should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008). The court must exclude "duplicative or excessive" time from its fee award. *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 161 (2006); *see also Ketchum*, 24 Cal. 4th at 1132 (stating "inefficient or duplicative efforts [are] not subject to compensation").

The billing records submitted by the KLG indicate that its attorneys expended 68.6 billable hours on this case while Wirtz Law billed 43.40 hours to the case. (Doc. No. 83-2 at 36; Doc. No. 83-3 at 11.) FCA objects to the reported hours, arguing there was duplication, as well as other excessive rates or time billed. (Doc. No. 69 at 10–16.) The Court will address FCA's specific objections below.

First, FCA argues "Plaintiff's counsel used boilerplate pleadings and discovery that it has relied on for countless cases in the past." (Doc. No. 69 at 10.) For example, FCA objects to KLG partners billing $230.00 for drafting and reviewing Plaintiff's Complaint, which is the same standard form complaint KLG uses in every case against FCA. (*Id.*) FCA protests that this activity should be performed by a paralegal. (*Id.*) While this amount is not entirely excessive, the Court will reduce KLG's fees by $100.00. Furthermore, the Court notes partner Amy Morse of KLG billed $1,610.00 for drafting written discovery. (Doc.

No. 63-2 at 31.) These amounts are rather excessive particularly given that (1) Amy Morse is a partner at KLG and the work performed should have been delegated to a more junior attorney, and (2) drafting written discovery is a template-driven exercise because Plaintiff's counsel propounds the same discovery in every case against FCA. Thus, the Court, in its discretion, will reduce KLG's recoverable fees by $500.00.

FCA next points out managing partner Steve Mikhov of KLG billed a total of $275.00 to "Review FCA's Answer to Complaint" and "Review Bob Baker's Answer to Complaint." FCA argues it "is entirely unclear why the managing partner at Knight Law Group needs to be reviewing FCA's answers to complaints. This work could have been completed by an associate." (Doc. No. 69 at 10.) Similarly, FCA complains of the $110.00 billed by Mikhov for reviewing "ENE results," $55.00 billed for reviewing "results of ENE hearing (multiple cases)" and an additional $55.00 billed to "Review results of Pretrial Conference hearing." Of course, Plaintiff's counsel has a duty to stay informed about the litigation at every turn of the matter. But in its discretion, the Court will reduce KLG's recoverable fees by $150.00.

Next, FCA protests the "countless instances of unreasonable billing entries for reviewing the file and essentially every document and piece of correspondence included therein." (Doc. No. 69 at 11.) FCA highlights that in total, "approximately **20 hours** were spent in review of the file or some aspect thereof. Thus, approximately a third of the time incurred by Knight Law Group was spent 'reviewing' the file." (*Id.* (emphasis in original).) Again, counsel has a professional obligation to review documents pertaining to Plaintiff's matter, and the review of documents is not per se unreasonable. However, the Court, in its discretion, will adjust KLG's fees downwards by $500.00 to account for any duplication or excessive time billed for this review.

FCA also argues that Wirtz Law unreasonably incurred fees post-settlement. Specifically, FCA states "approximately half of the 43.4 hours claimed by Wirtz Law were incurred in connection with the instant Motion." (Doc. No. 69 at 11–12.) Looking closer at the work completed in connection with the instant motion for attorneys' fees, the Court

5

makes the following adjustments. First, Wirtz Law billed $4,185.00 for preparing the motion for attorneys' fees. (Doc. No. 63-3 at 11.) Because the Court agrees with FCA that the instant motion is largely a template-driven activity, the Court finds this amount to be unreasonable. As such, the Court will reduce Wirtz Law's fees by $1,500.00 for the work completed on the motion. Second, Wirtz Law billed $2,745.00 to draft the reply brief. (Doc. No. 96-2 at 2.) As the exercise of responding to FCA's opposition is largely a template-driven activity as well with only some individualized analysis, the Court will reduce the amount recoverable by Wirtz Law for the reply brief by $1,500.00. Finally, Wirtz Law may not be compensated $1,350.00 for the "anticipated" time traveling to and appearing for the hearing on instant fee motion. The hearing on this motion for attorneys' fees was vacated by the Court in its determination that the matter was suitable for determination on the papers. (Doc. No. 71.)

      Next, upon close examination of the billing submitted by counsel, the Court notes the following adjustments. First, partner Steve Mikhov of KLG billed $330.00 for "reviewing and auditing and billing," Denali Wixsom of Wirtz Law billed $350.00 for bates-stamping, and senior attorney Amy R. Rotman of Wirtz Law billed $90.00 for correcting an error in the certificate of service. As to these amounts, Plaintiff's counsel may not be compensated for purely clerical and administrative tasks. *See Castillo-Antionio v. Iqbal*, 2017 WL 1113300, at *7 (N.D. Cal. Mar. 24, 2017). Thus, these amounts will be excluded from KLG and Wirtz Law's fees. Second, Richard M. Wirtz of Wirtz Law billed $1,300.00 to get up to speed, and "[r]eview and analyze client file and develop trial strategy." (Doc. No. 63-3 at 8.) While the Court finds that this entry is mostly reasonable, the Court will in its discretion, reduce the fees by $300.00. Third, there are three entries totaling $1,265.00 billed by KLG for initial communications with Plaintiff and evaluation of client's claims. (Doc. No. 63-2 at 31.) These entries are undated, and there is no evidence that a fee agreement was even in place when these tasks occurred. Thus, in its discretion, the Court will exclude $500.00 from KLG's recoverable fees.

      In summation, KLG's total recoverable fee amount is reduced by $2,080.00. This

6

3:17-cv-00530-AJB-BGS

brings KLG's recoverable fees down to a total of $23,477.50. Likewise, Wirtz Law's fees are reduced by $5,090.00. This places Wirtz Law's fees to a total of $12,715.00.

### 2. Hourly Rates

FCA next argues that under all of the circumstances of this case, the hourly rates are excessive and unwarranted. (Doc. No. 69 at 13.) However, the Court is satisfied with the bases for Plaintiff's counsels' hourly rates. Particularly, Plaintiff has provided ample evidence, including surveys of the hourly rates of similar attorneys with similar experience and qualifications. (Doc. No. 63-3 at 14.) Thus, the Court finds the rates cited for all attorneys reasonable and supported by evidence.

### 3. Lodestar Calculation

The lodestar method calculates attorneys' fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *State of Fla. v. Dunne*, 915 F.2d 542, 545 n.3 (9th Cir. 1990) (citing *Hensley*, 461 U.S. at 433); *see also Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 489 (2016).

| LAW FIRM | LEGAL PROFRESSIONAL | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **Knight Law Group** | Alastair Hamblin | 17.4 | $325 | $5,655.00 |
| | Amy Morse | 10.6 | $350 | $3,710.00 |
| | Constance Morrison | 9.6 | $375 | $3,600.00 |
| | Kirk Donnelly | 3.1 | $400 | $1,240.00 |
| | Kristina Stephenson-Cheang | 12.7 | $375 | $4,762.50 |
| | Larry Castruita | 6.0 | $385.00 | $2,310.00 |
| | Natalee Fisher | 2.6 | $250 | $650.00 |
| | Steve Mikhov | 6.6 | $550 | $3,630.00 |
| **Knight Law Group Total** | | | | $25,557.50 |
| | | | | |
| **Wirtz Law** | Richard M. Wirtz | 2.6 | $650 | $1,690.00 |
| | Jessica R. Underwood | 1.8 | $400 | $720.00 |
| | Lauren B. Veggian | 6.6 | $350 | $2,310.00 |
| | Denali Wixsom | 2.0 | $175 | $350.00 |
| | Rebecca Evans | 4.5 | $200 | $900.00 |

| | Samuel Albert | 0.9 | $200 | $180.00 |
|---|---|---|---|---|
| | Amy R. Rotman | 7.5 | $450 | $3,375.00 |
| | Erin K. Barns | 17.30 | $450 | $8,280 |
| **Wirtz Law Total** | | | | $17,805.00 |
| **TOTAL** | | | | **$43,362.50** |

Here, with no adjustments to the reasonable hourly rates, the total amount of fees for both Knight Law Group and Wirtz Law is $43,362.50. Taking into account the previously noted reductions, the total lodestar amount is $23,477.50 for KLG's fees and $12,715.00 for Wirtz Law's fees. Therefore, Plaintiff's counsels' total lodestar amounts is **$36,192.50**.

### 4. Application of a Multiplier

Once a court has calculated the lodestar, "it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Laffitte,* 1 Cal. 5th at 504 (citation omitted); *see also Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (indicating the court may adjust the fee award considering "the following factors: (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award.").

Here, Plaintiff seeks a 0.5 multiplier based on the risk of taking this case on a contingent fee basis, the substantial costs advanced, the result achieved, and the delay in payment. (Doc. No. 63-1 at 24.) Significantly, however, this case did not present particularly novel or difficult questions of law or fact. Indeed, the issues related to the alleged defect in FCA's vehicles were addressed in *Velasco, et al. v. Chrysler Group LLC*, Case No. 2:13–cv–08080–DDP–VBK and *Hall v. FCA US LLC*, Case No. 1:16-cv-0684-JLT. Thus, the issues presented in this action were not uniquely complex. *See Steel v. GMC,* 912 F. Supp. 724, 746 (N.J. Dist. 1995) ("the issues in lemon law litigation are not

complex and do not require a significant amount of legal analysis or novel pleading"). Additionally, it is highly unlikely that the litigation of this specific case precluded counsel, as lemon law attorneys, from taking on other matters. Finally, the Court finds the contingent nature of the fee award is outweighed by the other factors, especially in this action where the disputed facts and issues to be resolved were minimal. Indeed, there was nothing unusual about this case that would put counsel at great risk for accepting the matter on a contingent basis. Accordingly, the Court declines to award a multiplier and finds the lodestar amount of $36,192.50 as reasonable.

### B. Plaintiff's Motion to Re-Tax Costs

Turning to Plaintiff's motion to re-tax costs, Plaintiff additionally seeks to re-tax the $18,559.43 portion of Plaintiff's cost bill. (Doc. No. 93.) Plaintiff originally filed a Bill of Costs seeking to recover $20,483.81, (Doc. No. 86), but the Clerk of Court issued an Order Taxing Costs in the amount of $2,658.63 in favor of Plaintiff. (Doc. No. 92.) Plaintiff then submitted a motion seeking to re-tax the remaining $18,559.43 in costs. (Doc. No. 93.) FCA filed an opposition, arguing these remaining costs include numerous items that are excessive, unreasonable, and unnecessary. (Doc. No. 95.)

"In general, an award of costs in federal district court is governed by Federal Rule of Civil Procedure 54(d) and not applicable state law, even in diversity cases." *Self v. FCA US LLC*, No. 1:17-CV-01107-SKO, 2019 WL 1994459, at *12 (E.D. Cal. May 6, 2019) (citing *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003)). An exception exists under *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049 (9th Cir. 2003), *as amended on denial of reh'g* (Sept. 25, 2003), which held that the measure of damages is a matter of state substantive law where "a state law provision allows for the awarding of costs as part of a substantive, compensatory damages scheme[,]" *Kelly v. Echols*, No. CIVF05118AWISMS, 2005 WL 2105309, at *16 (E.D. Cal. Aug. 30, 2005). In *Clausen*, the Ninth Circuit found that the measure of damages under Oregon's Oil Spill Act "'is inseparably connected with the right of action[.]'" *Clausen*, 339 F.3d at 1065 (quoting *Chesapeake & O. Ry. Co. v. Kelly*, 241 U.S. 485, 491 (1916)). The Ninth Circuit

added that the Oregon Oil Spill Act presented the court "with an 'express indication' of a state legislature's 'special interest in providing litigants' with full compensation for reasonable sums expended in pursuit of [their] Oil Spill Act claim." *Clausen*, 339 F.3d at 1065 (citation omitted). Thus, the analysis focuses on whether a state legislature has expressed a special interest in providing litigants with attorneys' fees.

Here, section 1794(d) of the California Civil Code provides that buyers prevailing in an action under the Song-Beverly Act "shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794 (emphasis added). The California Legislature has demonstrated a "special interest" in permitting prevailing Song-Beverly plaintiffs to recover costs and expenses under section 1794. As the California Court of Appeal has noted "[a]n analysis by the Assembly Committee on Labor, Employment, and Consumer Affairs states: 'Indigent consumers are often discouraged from seeking legal redress due to court costs. The addition of awards of 'costs and expenses' by the court to the consumer to cover such out-of-pocket expenses as filing fees, expert witness fees, marshal's fees, etc., should open the litigation process to everyone.'" *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 138 (1995), *as modified on denial of reh'g* (June 22, 1995). Therefore, the Court concludes that the Song-Beverly Act applies to Plaintiff's contention that it is entitled to costs and expenses.

However, while state substantive law may apply, this does not obviate the Court's obligation to ensure that the costs were "reasonably incurred." Thus, the Court will briefly review whether Plaintiff's requests costs and expenses are reasonable. First, Plaintiff seeks $577.94 for service of summons and subpoenas. This includes service of summons on FCA and its dealership, Bob Baker, and deposition subpoenas to Bob Baker's PMQ, service advisors, and technician. (Doc. No. 93-1 at 14.) The Clerk of Court taxed $317.94 for: (1) the two charges for service of summons ($117.94 together), the charge for service of a

deposition subpoena on Bob Baker's PMQ ($190.00), and the charge for a declaration of non-service on Bob Baker's service advisor, James Ramsey ($10.00). The Clerk of Court did not allow costs for service of deposition subpoenas on service advisor, Mike Zscutty ($130.00) and technician No. 945 ($130.00). FCA argues the costs were not reasonably necessary to the conduct of this litigation because these depositions were related to claims against the selling dealership, Bob Baker, that Plaintiff herself dismissed on February 17, 2017. (Doc. No. 95 at 6.) FCA also points out the dealership's personnel were never deposed. (*Id.*) Because the deposition did not move forward, the Court finds that these amounts were not reasonably incurred. As such, Plaintiff may not recover these amounts.

Second, Plaintiff seeks $646.07 for: (1) condensed copies of deposition transcripts, (2) a "litigation support package", and (3) attorney travel expenses to attend depositions. (Doc. No. 93-1 at 16.) Plaintiff explains these deposition costs were reasonable to defend the depositions of the Plaintiff, Plaintiff's expert Thomas Lepper, Barbara Luna, and to take the deposition of FCA's expert Jeff Richards. (*Id.*) The Court agrees these amounts are not unreasonable and may be recovered. *See, e.g*, *Hellenberg v. Ford Motor Co.*, No. 18CV2202 JM (KSC), 2020 WL 1820126, at *6 (S.D. Cal. Apr. 10, 2020) (agreeing that costs and expenses related to travel for a deposition may be recovered).

Third, Plaintiff seeks $17,499.82 in costs for expert witness fees. (Doc. No. 93-1 at 17.) FCA objects to the $15,055.88 in expert fees related to Dr. Luna, and the $2,444.82 expert fees related to Thomas Lepper. (Doc. No. 95 at 4–5.) The Court agrees that not all the expert fees were reasonably incurred. Indeed, Dr. Luna spent 45.75 hours on a case where her testimony is nearly identical to that given in a hundred or more other cases against FCA. (Doc. No. 95 at 5.) Moreover, FCA argues Dr. Luna was Plaintiff's fraud expert, yet Plaintiff did not recover anything on her fraud claim. The Court largely agrees with FCA, and so, in its discretion, will re-tax costs in the amount of $7,000.00 for amounts expended on expert fees.

Finally, Plaintiff additionally seeks a total of $204.65 for: (1) attorney services and messenger court filings and service, (2) mediation, (3) overnight courier, (4) travel, (5)

copies, (6) and Westlaw charges. (Doc. No. 93-1 at 17–20.) The Court concludes that these small amounts expended were reasonably incurred in litigating this matter. As such, these costs may be re-taxed in the amount of $204.65.

Finally, Plaintiff seeks attorneys' fees for bringing the instant motion to re-tax costs. In opposition, FCA argues that Plaintiff's request for attorneys' fee is improper because the request is not a suitable subject matter for a motion to re-tax. (Doc. No. 95 at 2.) FCA also contends that should the Court consider the request, it should still be denied because Plaintiff does not submit any competent evidence to support the qualification of the lawyer who worked on the case to justify the hourly rates and fees sought. (*Id.*) In consideration of judicial economy and efficiency, the Court will address Plaintiff's brief request for attorneys' fees incurred in conjunction with the motion to re-tax costs. Here, it is true that the Song-Beverly Act, and the parties settlement agreement contemplates that Plaintiff is entitled to "a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time reasonably incurred in connection with the commencement and prosecution of this action pursuant to Civil Code Section 1794(d), to be determined by the court if the parties cannot agree." (Doc. No. 93-2 at 7.) However, in review of Plaintiff's bill submitted in support of her request, the Court finds that a reduction is appropriate. Wirtz Law billed $2,385.00 for drafting the instant motion to re-tax costs, and $1,800.00 to draft all documents filed in connection with the reply brief. The Court finds the amount requested for the motion to re-tax mostly appropriate but will in its discretion, reduce the amount Wirtz Law may be compensated by $1,500.00 because portions of the motion should have been template-driven work.

## IV. CONCLUSION

Based upon the foregoing, the Court **ORDERS** as follows:

    **1.** **Plaintiff's motion for fees is GRANTED in the modified amount of $36,192.50; and**

//

//

2. Plaintiff's motion to re-tax costs is **GRANTED** in the modified amount of $9,350.72.

**IT IS SO ORDERED.**

Dated: November 23, 2020

*/s/ Battaglia*
Hon. Anthony J. Battaglia
United States District Judge